UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION at ASHLAND

CRIMINAL ACTION NO. 08-07-DLB-1

UNITED STATES OF AMERICA,                                                      PLAINTIFF,

V.                              **MAGISTRATE JUDGE'S REPORT**
                                    **& RECOMMENDATION**

ROGER A. BROWNE,                                                               DEFENDANT.

*** *** *** ***

This matter is before the Court on the Defendant's *pro se* motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. [R. 358].  Consistent with local practice, this matter has been referred to the undersigned for preparation of a Report and Recommendation.  The matter having been fully briefed, and after determining that an evidentiary hearing is not necessary, it is recommended that the Defendant's motion for post-conviction relief be denied.

I.   FACTUAL & PROCEDURAL BACKGROUND

Roger A. Browne is a medical doctor who was charged by way of indictment with violating 21 U.S.C. § 846 by participating in a conspiracy to distribute oxycodone throughout a number of counties in eastern Kentucky in violation of 21 U.S.C. § 841(a). [Rs. 1, 13, 42, 108].  On November 13, 2008, Browne appeared before United States District Judge David L. Bunning and entered a plea of guilty to Count 1 of the Superseding Indictment. [R. 174].  To support the factual basis of his guilty plea, Browne admitted that at the relevant times he was a physician at a pain management clinic in Florida.  As part of his practice, Browne would frequently see patients from Kentucky and prescribe them oxycodone, despite being aware of a high probability that some of those individuals

were unlawfully distributing the pills. [R. 370, *Transcript of Rearraignment* at 62-63; R. 268, *Plea Agreement* at 1-8]. Browne further admitted that his knowledge of this arrangement was based on the high volume of persons traveling from Kentucky to Florida to seek pain medication at his clinic and the fact that another co-conspirator, "Burchett", and a cooperating witness, "RC", were directing individuals from Kentucky to see Browne for treatment. [R. 370 at 63]. Despite his knowledge that oxycodone prescribed by him was likely being distributed illegally, Dr. Browne continued to prescribe oxycodone to persons from Kentucky, including those referred to him by Burchett and RC. [Id.].

Following his plea of guilty, Browne appeared before the Court for sentencing proceedings on March 9, 2009. [R. 283]. Although the United States recommended a 23-month sentence, Browne was ultimately sentenced to 30 months imprisonment to be followed by three years of supervised release. [R. 293]. Browne did not file a direct appeal, but on January 26, 2010, he filed the present motion attacking his guilty plea, conviction, and sentence on numerous grounds. [R. 358].

## II. JURISDICTION

As a threshold matter, the Court must first determine whether it has jurisdiction to consider Browne's motion. Motions under § 2255 can only be brought by federal prisoners who are "in custody under sentence of a court ... ." 28 U.S.C. § 2255(a). Browne completed his term of imprisonment and was released from federal custody on June 18, 2010.[1] As stated above, however,

_____

[1] The Bureau of Prisons maintains an on-line Inmate Locator Service which allows the public to track the location of federal inmates. This service indicates that Browne was released from federal custody on June 18, 2010. Pursuant to Fed.R.Evid. 201(c), the Court may take judicial notice of the information provided on the Inmate Locator Service. See Meador v. O'Brien, No. 04-cv-224-HRW, 2005 WL 2133598, *4 (E.D. Ky. Aug. 31, 2005).

he was also sentenced to a term of three years supervised release.  Since that term remains in effect, Browne's § 2255 motion is not moot because a favorable decision could redress an injury - his continued supervision - caused by an allegedly unconstitutional conviction.  See <u>United States v. Zack</u>, 173 F.3d 431, 1999 WL 96996, *1 (6th Cir. Feb. 1, 1999) (table) ("A defendant serving a term of supervised release is 'in custody' for the purposes of § 2255.").  Furthermore, because Browne filed the motion before his term of imprisonment was completed, the Court is obligated to consider it.  See <u>Hampton v. United States</u>, 191 F.3d 695, 697 (6th Cir. 1999) ("Where a prisoner's sentence is not fully expired at the time of filing, but expires during the litigation of the collateral attack, the proceeding does not become moot.").

### III. WAIVER OF THE RIGHT TO COLLATERAL ATTACK

Before proceeding to the merits of Browne's many claims, the Court must also address the fact that Browne's plea agreement contains a waiver of his right to file a motion for post-conviction relief.  In his plea agreement, Browne agreed to waive "the right to appeal and the right to attack collaterally the guilty plea, conviction, and sentence, including any order of restitution." [R. 268 at 9].  A defendant is generally bound by such a waiver so long as it is made knowingly, intelligently, and voluntarily. <u>United States v. Fleming</u>, 239 F.3d 761, 763 - 64 (6th Cir. 2001);  <u>Watson v. United States</u>, 165 F.3d 486, 489 (6th Cir. 1999) ("a defendant's informed and voluntary waiver of the right to collaterally attack a sentence in a plea agreement bars such relief.").  To determine whether the waiver is binding, "the proper inquiry under Rule 11 is whether the defendant was informed of and understood the terms of the plea agreement." <u>United States v. Sharp</u>, 442 F.3d 946, 951 (6th Cir.2006); <u>see</u> <u>also</u> <u>United States v. Broom</u>, 207 Fed. Appx. 565, 569 (6th Cir.2006)("Rule 11(b)(1)(N) does not necessitate a district court to specifically ask a defendant whether he or she

3

understands the terms of the appellate waiver provision. It only requires a court to 'determine' that the defendant understands the terms of such provision."). Either the district judge or the prosecutor may address the components of the waiver provision in open court, so long as the district judge determines that the defendant understands the terms of the waiver. See Sharp, 442 F.3d at 950-51.

The record reveals that Browne's waiver was made both knowingly and voluntarily. The waiver provision of Browne's plea agreement was addressed numerous times throughout the rearraignment proceedings. First, in summarizing Browne's plea agreement, the prosecutor explained that "all of the defendants have waived their right to appeal as well as the right to file a separate lawsuit in which they would challenge the validity of their guilty plea, the resulting conviction and any sentence imposed by the Court." [R. 370, *Rearraignment Transcript* at 31]. The Court then verified that Browne and his co-defendants understood the implications of the collateral attack waiver:

> THE COURT:    Now, the prosecutor referenced you can't file a separate lawsuit, I think, is the words he used. Where it says in your plea agreements you're giving up your right to attack collaterally the guilty plea, conviction and sentence, that means you can't come back later and file what's referred to as a 2255 motion, alleging that your constitutional rights were violated in some way throughout this process. Do you each understand that?
>
> BROWNE:       Yes, sir.

[Id. at 51-52]. Based on this colloquy the Court found that Browne's waiver of the right to collateral attack was knowing and voluntary and that he understood the consequences of his waiver. [Id. at 52]. Browne does not challenge this finding in his § 2255 motion.

Despite his knowing and voluntary waiver of the right to collateral attack, a number of Browne's claims must nevertheless be addressed because they arguably "go to the very validity of

4

[the] guilty plea." In re Acosta, 480 F.3d 421, 422 (6th Cir. 2007).  Browne makes numerous allegations regarding the validity of his guilty plea.  Among other things, he alleges that defense counsel performed ineffectively during the plea negotiation process, that his plea was not knowing and voluntary, that he was coerced and intimidated into pleading guilty, that his plea was based on promises not contained in the plea agreement, and that he was immune from prosecution.  For the reasons discussed in more detail below, none of Browne's allegations undermine the validity of his guilty plea.

## IV.  VALIDITY OF THE GUILTY PLEA

While many of Browne's allegations are undeveloped, difficult to follow, speculative, or amount to nothing more than personal insults directed against defense counsel, the prosecutor, and the presiding Judge, the Court is required to construe his *pro se* pleadings liberally and give Browne the benefit of the doubt.  See Franklin v. Rose, 765 F.2d 82, 84-85 (6th Cir. 1985).  Accordingly, the merits of each of his claims will be addressed to the extent possible.

**A.      Ineffective Assistance of Counsel**

A criminal defendant is entitled to effective representation by counsel at all critical stages of the proceedings, including plea negotiations. See King v. Bobby, 433 F.3d 483, 490 (6th Cir. 2006).  To prevail on a claim of ineffective assistance of counsel based on counsel's advice during the plea process, a defendant must establish two elements: (1) counsel's performance fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for counsel's errors, the defendant would have pleaded differently.  Griffin v. United States, 330 F.3d 733, 736-37 (6th Cir. 2003) (citations omitted).  With respect to the first element, the proper measure of attorney performance is simply reasonableness under prevailing professional norms.    Strickland v.

5

<u>Washington</u>, 466 U.S. 668, 688 (1984).  Under the second element, the defendant must show merely that there is a reasonable probability that, but for his attorney's error, he would not have pled guilty and insisted ongoing to trial.  <u>Griffin</u>, 330 F.3d at 737.  "Defendants alleging the ineffective assistance of counsel bear 'a heavy burden of proof.'" <u>Pough v. United States</u>, 442 F.3d 959, 966 (6th Cir. 2006) (citing <u>Whiting v Burt</u>, 395 F.3d 602, 617 (6th Cir. 2005)).

1.  Promise of a Specific Sentence

Browne first argues that his attorneys performed ineffectively by advising him that he would receive a sentence of 23 months imprisonment in exchange for his guilty plea and promise to assist the United States with other investigations.  Contrary to the alleged promise, Browne actually received a 30-month sentence.  Even if defense counsel had in fact promised Browne that he would receive a specific sentence by pleading guilty, such error did not prejudice Browne.  First, the plea agreement contains no promise of a specific sentence and states in clear terms that any sentencing recommendation made by the parties does not bind the Court. [R. 268 at 8].  During the Rule 11 plea colloquy, the Court confirmed that Browne had read and understood the terms of his plea agreement. [R. 370 at 17-18].  The Court also asked whether anyone made any promises or assurances to Brown which were not contained in the written plea agreement.  Browne replied that they had not. [<u>Id.</u>].

Second, throughout the rearraignment proceedings, Browne was advised that sentencing recommendations were not binding and that his sentence would ultimately be determined by the Court:

THE COURT:        Generically, I can say that any recommendations by your attorneys or by the government's attorney regarding your ultimate sentence at the end of the case -- usually about three to four months from now, depending on timing, we'll set a sentencing date. There may be recommendations. There may be requests made on your behalf at sentencing. Those things

6

are up to the Court, ultimately. Does everybody understand that? Mr. Browne?

BROWNE:        Yes, sir.

[Id. at 28].

THE COURT:      To the extent there are recommendations at each of your plea agreements regarding what the guidelines should be, those recommendations aren't binding on the probation officer who prepares the presentence report, nor are they binding on me when I ultimately sentence you. Do you each understand that? Mr. Browne?

BROWNE:        Yes, sir.

[Id. at 46]. The Court further advised Browne that he faced a maximum statutory penalty of twenty years imprisonment, and Browne affirmed his understanding of that. Id. at 42. Finally, Browne acknowledged that he could not withdraw his guilty plea if his sentence ended up being more severe than what was recommended to the Court. [Id. at 47].

The Sixth Circuit has held that a proper plea colloquy cures any misunderstanding a defendant may have regarding a plea agreement. See Ramos v. Rogers, 170 F.3d 560, 565 (6th Cir. 1999); Boyd v. Yukins, 99 Fed. Appx. 699, 704-05 (6th Cir. 2004). As outlined above, the Court conducted a full and proper Rule 11 colloquy, including a detailed explanation of the sentencing process. On each occasion, Browne affirmed that he understood the sentencing process, that any sentencing recommendations made by defense counsel, the prosecution, or the probation officer were not binding on the Court, and that his actual sentence would ultimately be determined by the Court. "[W]here the court has scrupulously followed the required procedure, 'the defendant is bound by his statements in response to that court's inquiry.'" Baker v. United States, 781 F.2d 85, 90 (6th Cir. 1986) (citing Moore v. Estelle, 526 F.2d 690, 696-97 (5th Cir. 1976)); see also

Blackledge v. Allison, 431 U.S. 63, 74 (1977) ("Solemn declarations in open court carry a strong

presumption of verity.").

If Browne had indeed been promised a specific sentence in exchange for his guilty plea, it

was incumbent upon him to reveal that term when the Court asked him whether anyone made any

promises or assurances which were not contained in the written plea agreement.  Baker, 781 F.2d

at 89.  Instead, Browne remained silent, even while the Court explained in detail how his sentence

would be calculated.  Even if Browne had alleged specific and corroborated facts for the Court to

believe his attorney actually promised him a sentence of 23 months if he pled guilty, "the Court

cured any prejudice that might have resulted from such a promise during the plea colloquy by

making it clear the Court, not the parties, would determine his sentence, and Petitioner would be

bound to his plea even if his sentence were more severe than he expected." Garnica v. United States,

361 F. Supp.2d 724, 737 (E.D. Tenn. 2005); see also Brown v. United States, 75 F.Supp.2d 345, 355

(D.N.J. 1999) ("It has long been settled as a general rule that where an adequate guilty plea hearing

has been conducted, an erroneous prediction or assurance by defense counsel regarding the likely

sentence does not constitute grounds for invalidating a guilty plea on grounds of ineffective

assistance of counsel.").

Browne has not alleged any "extraordinary circumstances" that would excuse his failure to

provide truthful answers during rearraignment.  Baker, 781 F.2d at 90 ("where Rule 11 procedures

were fully adequate, absent extraordinary circumstances, or some explanation of why defendant did

not reveal other terms, at least when specifically asked to do so by the court, a defendant's plea

agreement consists of the terms revealed in open court ... .").  Browne, by his own admission, is a

highly educated individual.  The Court found him competent and capable of entering an informed

guilty plea. He testified under oath that there were no other agreements or promises that induced him to enter a plea agreement. He understood that the parties' sentencing recommendations would not bind the Court. It was incumbent upon the Defendant to answer the Court's questions truthfully, and his failure to do so will not be rewarded by granting collateral relief based upon factual allegations that directly contradict his prior sworn testimony. Since the Court's proper Rule 11 colloquy cured any possible errors, Browne is unable to demonstrate that he would have insisted on going to trial absent his attorney's alleged promise of a specific sentence.

2. Failure to Contact Potential Witnesses

Browne also contends that his attorneys rendered ineffective assistance by failing to contact a witness who may have been able to provide exculpatory evidence. [R. 358 at 6-7]. In his reply brief, Browne identifies this potential witness as Dr. Howard Newman, Browne's partner at the pain management clinic in Florida. [R. 398 at 2]. Although not clearly discernable from his pleadings, Browne appears to argue that he would not have pled guilty had his attorneys procured the exculpatory evidence he directed them to.

"Under Strickland, trial counsel has a duty to investigate his case ... ." Steward v. Wolfenbarger, 468 F.3d 338, 354 (6th Cir. 2006). "This duty includes the obligation to investigate all witnesses who may have information concerning his or her client's guilt or innocence." Id. (quoting Towns v. Smith, 395 F.3d 251, 258 (6th Cir. 2005)). While defense counsel undoubtedly has a duty to investigate potential witnesses, in a § 2255 motion alleging the ineffective assistance of counsel, the defendant has the burden of showing "what evidence counsel should have pursued and how such evidence would have been material." Hutchison v. Bell, 303 F.3d 720, 748 (6th Cir. 2002) (citations omitted). Browne has not satisfied this burden.

9

With respect to Newman, Browne states that he was a potential witness to Browne's innocence, but does not summarize what Newman's testimony would have been or provide an affidavit from him. Relief cannot be granted based on such bare allegations. See, e.g., Malcum v. Burt, 276 F.Supp.2d 664, 679 (E.D. Mich. 2003) (ineffective assistance of counsel claim failed where prisoner did not make an affirmative showing as to what the missing evidence would have been and prove that the testimony of potential witnesses would have produced a different result); Dell v. Straub, 194 F.Supp.2d 629, 650 (E.D. Mich. 2002) (vague and speculative allegations that defense counsel was ineffective for failing to investigate witnesses does not entitle him to relief). Additionally, Browne's allegations are in direct contrast to the representations of his attorney, who states that he contacted the only witness identified by Browne. [R. 377-1, *Affidavit of Alex Dathrone and Brian Butler* at 2].[2]

The Court further notes that Dr. Newman himself was apparently the subject of an investigation by the Drug Enforcement Agency. [Id.]. In fact, as part of his plea agreement, Browne agreed to cooperate with law enforcement in the ongoing investigation of illegal activity at the pain clinic where Browne and Newman worked. [R. 268, *Sealed Supplement to Plea Agreement* at 1-2]. Given these circumstances, the Court finds it highly unlikely that Newman would have been willing to risk self-incrimination by testifying at Browne's trial. Browne has failed to demonstrate that his attorneys performed ineffectively by not contacting Dr. Newman as a potential witness.

---

[2] The witness contacted by Mr. Dathrone advised "that client has had serious issues with over prescribing medications in other states and in other employment capacities. Further, that many of client's patients had overdosed throughout the years due to client's prescribing patterns. Witness indicated she cared deeply for client and did not want the government to keep 'digging.' It was her opinion that client should accept the best possible 'deal' and 'move on.'" [R. 377-1 at 2].

3.  Conflict of Interest

Browne also claims that his attorneys had a conflict of interest because they are former prosecutors who previously worked with the Assistant United States Attorney prosecuting Browne's case. [R. 358 at 12].  Browne argues that had his attorneys not had a "cozy" relationship with the prosecutor, they would have been more aggressive in his defense and would have filed the pretrial motions Browne expected.  Browne also believes his attorneys have further demonstrated their conflict by providing an affidavit that contests Browne's ineffective assistance of counsel claims.

Because this case does not involve multiple representation, Browne must show both that his attorneys had an actual conflict of interest and that he was prejudiced by that conflict.  See Whiting v. Burt, 395 F.3d 602, 618-19 (6th Cir. 2005) (noting that prejudice can only be presumed in cases like those involving multiple representation where (1) prejudice was obvious or there was a high probability of prejudice or (2) it is difficult to prove prejudice).  To demonstrate prejudice, Browne must prove that the conflict of interest adversely affected the voluntary nature of his guilty plea.  See United States v. Rahal, 191 F.3d 642, 645 (6th Cir. 1999).

Browne's bare assertion that his attorneys had conflicting loyalties because they were formerly employed as prosecutors is insufficient to establish an actual conflict.  Quite the opposite, defense counsel's past experience as prosecutors would probably inure to the benefit, not detriment, of Browne.  For example, despite Browne's inability to cooperate with the Government in related investigations, his attorneys were nevertheless able to obtain for Browne the full benefit of the plea agreement, including a recommendation by the Government of a 23-month sentence.  Moreover, Browne has not provided any evidence to suggest that any of counsel's decisions were motivated by loyalty to their former employer.  There was no discernible conflict of interest in this case.

4.  Remaining Ineffective Assistance Claims

Browne's remaining ineffective assistance of counsel claims either do not relate to the validity of his guilty plea or are so undeveloped that they do not warrant further consideration by the Court.  For example, Browne lists sixteen different motions he expected counsel to file, but makes no attempt at explaining how the filing of these motions would have changed the result or caused him to reject the plea agreement. [R. 358 at 6].  As Browne's attorneys note in an affidavit accompanying the Government's response, Browne "was cooperating with the United States in this matter and as such, filing some of these motions would have been counterproductive.  Additionally, the remaining motions were already addressed by way of Court orders and criminal rules of discovery and inspection." [R. 377-1 at 2].  Browne has not demonstrated that his attorneys performed in an objectively unreasonable manner by not filing the requested motions, and furthermore, Browne waived his right to bring any post-conviction claims based on ineffective assistance of counsel.  Davila v. United States, 258 F.3d 448, 451 (6th Cir. 2001) ("When a defendant knowingly, intelligently, and voluntarily waives the right to collaterally attack his or her sentence, he or she is precluded from bring[ing] a claim of ineffective assistance of counsel based on 28 U.S.C. § 2255.").

**B.     Guilty Plea was Knowing and Voluntary**

Browne also asserts that his guilty plea was neither intelligent nor voluntary.  He claims that he did not understand what he was pleading guilty to and that he was coerced and intimidated into entering a guilty plea.  These claims would ordinarily be barred by Browne's waiver of the right to collateral attack since he did not pursue a direct appeal challenging either the voluntariness or

12

intelligence of his guilty plea.[3] <u>Waucaush v. United States</u>, 380 F.3d 251, 254 (6th Cir. 2004) (citing <u>Bousely v. United States</u>, 523 U.S. 614, 621 (1998)).  Two circumstances may excuse a defendant's failure to challenge the plea on direct appeal: (1) "cause" for the defendant's failure to pursue an appeal and "prejudice" that would result from not considering the challenge; or (2) the defendant was "actually innocent" of the crime to which he pled.  <u>Id.</u> (citing <u>Bousely</u>, 523 U.S. at 622).

Turning first to actual innocence, Browne "must demonstrate that in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him."  <u>Id.</u>  Browne contends that he is actually innocent because: (1) he had a legitimate medical purpose for prescribing oxycodone to his Kentucky patients, and (2) the co-defendants and cooperating witness who implicated Browne in the conspiracy framed him in order to receive more lenient treatment. [R. 358 at 9-10].

Browne pled guilty to violating 21 U.S.C. § 846 by being willfully blind to the fact that a number of his patients from Kentucky were seeking prescriptions for oxycodone so they could distribute the pills to others in violation of 21 U.S.C. § 841. [R. 268, *Plea Agreement* at 1-8]. Accordingly, Browne's first claim of innocence, if true, would do nothing to undermine his conviction.  Even if Browne's Kentucky patients had a legitimate medical need for narcotic pain medication, that fact alone would not preclude the existence of an agreement to unlawfully distribute the controlled substances to others after Browne prescribed them to his patients.

---

[3] Although Browne also waived the right to appeal his guilty plea, conviction, and sentence, that waiver does not prevent a defendant from filing a direct appeal challenging the validity of the guilty plea itself.  <u>See</u> <u>United States v. Taylor</u>, 281 Fed. Appx. 467, 468 (6th Cir. 2008); <u>United States v. Webb</u>, 403 F.3d 373, 378 n. 1 (6th Cir. 2005).

13

Browne's second claim of innocence is likewise unavailing.  Not only does Browne fail to provide any evidence in support of his contention, but the actual evidence in the record points to his guilt.  First, in open court, Browne admitted he continued prescribing oxycodone to individuals despite being aware of a high likelihood those same patients were illegally distributing the pills. [R. 370 at 62-64].  Second, as detailed in the plea agreement, Browne prescribed oxycodone to a cooperating witness even after that witness had been terminated as a patient and after Browne learned that the witness and other co-conspirators were being investigated.  [R. 268 at 5-8].  Additionally, law enforcement seized from Browne's Florida clinic the files of approximately 500 patients from just five Kentucky counties. [Id. at 7].  A reasonable jury could have convicted Browne based on this evidence, and he has not presented anything to suggest otherwise.

The Court next addresses whether Browne's failure to pursue a direct appeal of his guilty plea may be excused for cause.  Since Browne blames his allegedly unknowing and involuntary plea on misconduct by defense counsel, the Court will give him the benefit of the doubt and presume that cause has been established.  As discussed in more detail below, however, Browne cannot demonstrate prejudice because the record contradicts his claim that the guilty plea was unknowing and involuntary.

1.  Knowing and Intelligent Guilty Plea

A plea "is constitutionally unintelligent if 'the record reveals that neither [Browne], nor his counsel, nor the court correctly understood the essential elements of the crime with which he was charged.'" Waucaush, 380 F.3d at 258 (quoting Bousely, 523 U.S. at 618-19).  "[A] plea does not qualify as intelligent unless a criminal defendant first receives real notice of the true nature of the charges against him."  Bousley, 523 U.S. at 618 (internal quotation and citation omitted).  As

14

previously discussed, Browne pled guilty to participating in a conspiracy to illegally distribute oxycodone. [R. 174]. The elements of this crime are (1) that Browne agreed with one or more persons to knowingly and intentionally distribute oxycodone, and (2) that at some point during the existence of the agreement, Browne knew the purpose of the agreement, and deliberately joined the agreement. [R. 268 at 1]. These elements were clearly set forth in the plea agreement and were reviewed in detail during the plea colloquy. [R. 380 at 56-57].

The factual basis for Browne's guilty plea was his willful blindness to the fact that a number of his patients from Kentucky were illegally distributing the oxycodone prescribed by him. [R. 370 at 62-63]. Browne now claims he did not understand what was meant by "willful blindness." [R. 398 at 3-4]. Browne's claim that he did not understand the plea agreement is belied by his sworn statements to the Court. After confirming that Browne had enough time to discuss the plea agreement with his attorneys and that Browne had read the plea agreement before signing it, [R. 370 at 9, 17], the Court asked the prosecutor to summarize the agreement. The prosecutor did so, resulting in the following discussion:

> MR. DICKEN:   Yes. With regard to Dr. Browne, as we know, he was a physician in Florida at a pain management clinic. He was aware of a high probability that some of the persons from Kentucky to whom he was prescribing oxycodone pills were unlawfully distributing those pills. Dr. Browne's knowledge of this fact was based on the high volume of persons traveling from Kentucky to Florida to see him for their complaints of pain and the fact that Miss Burchett and RC increasingly directed persons from Kentucky to him for treatment. Notwithstanding this knowledge, Dr. Browne deliberately closed his eyes to this obvious fact and continued to prescribe oxycodone pills to persons from Kentucky, including those specifically directed to him by Miss Burchett and RC.

> THE COURT:   Mr. Browne, do you acknowledge that you participated in the conduct as described by Mr. Dicken here this evening?

15

| | |
|---|---|
| BROWNE: | Yes, sir. Willful blindness, I think, the term is. |
| THE COURT: | What's that? |
| BROWNE: | Willful blindness. |
| THE COURT: | Willful blindness? You didn't ask any questions? You just kept doing it? |
| BROWNE: | Sir, I'm a physician. I treat patients. |
| THE COURT: | The description provided by the prosecutor is more than treating patients. Otherwise, you wouldn't have pled guilty. |
| BROWNE: | What I said before stands. I'm pleading to the willful blindness. |

[Id. at 62-64].

Browne now simply claims that because he is not an attorney, he did not understand what the term "willful blindness" meant. The prosecutor, however, explained in detail what the term meant in the context of Browne's guilty plea: despite knowing that many of his patients from Kentucky were likely distributing oxycodone, Browne turned a blind eye to this fact and continued prescribing the substance to those same individuals. Given the prosecutor's detailed explanation, Browne's educational background, and his statements made under oath during the plea colloquy, the Court is highly skeptical of his claim that he did not understand the elements of the crime he was pleading guilty to. First, there is no doubt that an agreement existed between Browne and others whereby Browne would write prescriptions for oxycodone. The only question is whether Browne knew that the purpose of this agreement was to distribute the oxycodone illegally. A defendant's knowledge of a fact may be inferred from willful blindness to the existence of that fact. United States v. Hoffman, 918 F.2d 44, 46 (6th Cir. 1990). Accordingly, by pleading guilty to "willful blindness", Browne was admitting that he knew the purpose of the agreement. Based on the record

16

before the Court, Browne's contention that he did not understand what was meant by "willful blindness" is not credible.

## 2.  Voluntary Guilty Plea

Browne also claims he was coerced and intimidated into pleading guilty.  Specifically, Browne contends his own attorneys coerced him into pleading guilty by advising Browne that the presiding judge did not like him, that Browne faced a foreign jury, and that the result of a trial would most certainly be 20 years imprisonment. [R. 398 at 2].  Browne also argues that the prosecutor played a role in coercing the guilty plea by expressing his personal opinion regarding Browne's guilt and truthfulness. [Tr. 358 at 11-12].  Once more, however, Browne's self-serving and unsupported claim is refuted by the record and his former attorneys' affidavit.

> At rearraignment, the Court specifically asked Browne whether his guilty plea was voluntary:
>
> THE COURT: Has anyone forced each of you to enter this plea; that is, I guess easier to ask the question, is the decision to enter a guilty plea by each of you a voluntary one? Mr. Browne?
>
> BROWNE: It is.

[R. 370 at 16].  Browne was given the opportunity to tell the Judge about any threats or coercion underlying his guilty plea, but instead, affirmed that the plea was entirely voluntary.  Browne's statements in open court "carry a strong presumption of verity" and "constitute a formidable barrier" in subsequent collateral proceedings.  See Blackledge, 431 U.S. at 74.  There is simply no credible evidence of coercion that would cast doubt on Browne's prior sworn testimony that the plea was voluntary.

Browne's claim of coercion and intimidation is further undermined by defense counsel's sworn affidavit:

17

> Counsel repeatedly advised client that he may pursue a trial in this matter. Client was provided a complete copy of the tendered discovery in this matter and both counsel and client spent a great deal of time discussing the materials and any potential defenses to them. ... Counsel informed client of the strength of the case against him both pretrial and post sentencing.

[R. 377-1 at 1]. By advising Browne of the risks of proceeding to trial and the weaknesses of his case, defense counsel was simply performing the duties of a competent attorney. While counsel's advice may have contributed to Browne's decision to plead guilty, he has hardly proven that he was intimidated or coerced into entering his plea.

Because Browne's plea was both knowing and voluntary, he cannot show that he was prejudiced by the failure to pursue a direct appeal of his guilty plea. Accordingly, Browne's claim that his plea was not knowing or voluntary is barred by his waiver of the right to collateral attack. Waucaush, 380 F.3d at 254.

## C.    Breach of the Plea Agreement

Browne's next claim for relief is based on the Government's alleged breach of the plea agreement. The sealed supplement to Browne's plea agreement stated that in exchange for Browne's cooperation in other related investigations, the United States would move for a downward departure under United States Sentencing Guidelines § 5K1.1 at the time of sentencing. [R. 268, *Sealed Supplement* at 1]. As part of Browne's cooperation, it was contemplated that the prosecution would move for him to be released from custody "so that he may actively cooperate with law enforcement in the ongoing investigation of illegal activity by the owner of Americare Health and Rehabilitation, which is the pain clinic at which Defendant worked during the charged criminal activity." [Id. at 1-2]. Browne claims that he was induced into accepting the plea agreement by the prosecution's promise that he would be released from custody prior to sentencing. Browne now

18

argues that the United States breached the plea agreement by failing to obtain his presentence release.

Following the entry of his guilty plea, Browne's attorneys began preparations to obtain his release. The facility holding Browne, however, advised that it would not release him because a detainer had been lodged against Browne based on an unrelated criminal matter in Florida. [R. 377-1, *Affidavit of Alex Dathrone and Brian Butler* at 1]. The Government and defense counsel agreed that Browne should be released only when the Florida detainer was retracted or resolved. [Id.]. Less than a month before Browne's sentencing hearing, the Florida detainer was lifted. [Id. at 2]. Because the detainer was resolved so close in time to the date of the sentencing hearing, the Government did not move for Browne's release. Although Browne was never released from custody, and therefore did not render the substantial assistance contemplated by the plea agreement, the Government nevertheless agreed to recommend a 23-month sentence, well below the guideline range of 46 to 57 months. [R. 308, *Sentencing Transcript* at 14]. Twenty-three months is the same sentence the Government would have recommended had it filed a § 5K1.1 motion based on substantial assistance. [R. 377-1 at 1]. In essence, Browne received the benefit of the entire plea agreement without having to fulfill his obligation to secure incriminating information against others.

"The Government's failure to adhere to its plea agreement in good faith has been held to implicate a defendant's due process rights." Elzy v. United States, 205 F.3d 882, 884 (6th Cir. 2000) (citations omitted). By not raising the Government's alleged breach of the plea agreement at sentencing or on direct appeal, however, Browne waived the right to bring this claim in a § 2255 proceeding. Id.; see also Fed. R. Crim. P. 32(d). The default may be excused only if Browne shows cause and prejudice. Id. (citing United States v. Frady, 456 U.S. 152, 167 (1982)).

19

Unsurprisingly, the only cause for default offered by Browne is the ineffective assistance of defense counsel.  First, Browne claims he did not raise the alleged breach of the plea agreement during the sentencing hearing because he was told by his attorneys not to address the Court.  Second, Browne claims his attorneys should have moved for a continuance of the sentencing hearing to allow more time for him to cooperate.  Browne contends that while on release pending sentencing, he would have used the additional time to consult other attorneys and prepare a better defense, although it is not clear what that defense would have been since Browne had already pled guilty to Count 1 of the indictment.

Browne's claim fails for numerous reasons.  First, he has failed to establish that counsel performed ineffectively under the Strickland standard, and therefore cannot demonstrate cause to excuse his default of this claim.  Second, even if counsel had performed ineffectively, thereby excusing Browne's default, Browne's claim is entirely without merit.  As discussed previously, the United States ultimately recommended that Browne be sentenced to 23 months, the same recommendation it would have made had Browne actually rendered substantial assistance. Considering Browne received the full benefit of the plea agreement, it can hardly be argued that the Government acted in bad faith.  Moreover, the authority to release Browne from custody pending sentencing lied with the Court, not the prosecution.  See 18 U.S.C. § 3145(c) (a defendant awaiting sentencing may be released by the judicial officer if it is clearly shown, among other things, that there are "exceptional reasons" why detention is inappropriate).  Since a detainer out of Florida had been lodged against Browne, it is unlikely that the Court would have ordered his release.  Simply stated, Browne has failed to demonstrate that the Government's handling of the plea agreement violated his due process rights.  Accordingly, this claim should be denied.

20

### D.      Immunity from Prosecution

Browne also claims that he should have been immune from prosecution because he was a medical doctor licensed to prescribe controlled substances. [R. 358 at 16].  Construing Browne's motion liberally,  this claim might arguably go to the validity of the plea agreement since Browne contends that the Court did not have jurisdiction to accept the plea.  Browne argues that he should have been immune from prosecution because he had a legitimate medical reason for prescribing controlled substances to other members of the conspiracy.  In support of this argument, Browne cites a Tenth Circuit case which held that a physician who is registered and who dispenses controlled substances in the usual course of professional conduct is immune from prosecution under 21 U.S.C. § 841.  United States v. Goldstein, 695 F.2d 1228, 1232 (10th Cir. 1983); see also United States v. Seelig, 622 F.2d 207, 212-13 (6th Cir. 1980) (registered doctors are exempt from criminal liability under §841(a) unless they were acting outside the usual course of professional practice); United States v. Moore, 423 U.S. 122, 124 (1975) ("registered physicians can be prosecuted under § 841 when their activities fall outside the usual course of professional practice.").

Browne's claim ignores the fact that he was prosecuted *because* he was writing prescriptions outside the usual course of a professional practice.  In both the written plea agreement and in open Court, Browne admitted that he was aware of a high likelihood that many of his Kentucky patients were illegally distributing the controlled substances Browne prescribed them.  Browne nevertheless turned a blind eye to this fact and continued writing prescriptions for oxycodone to these same individuals.  This conduct can hardly be described as falling within the usual course of a professional medical practice.  See, e.g., United States v. McIver, 470 F.3d 550, (4th Cir. 2006) (upholding conspiracy conviction of doctor who was willfully blind to his patients' true motives in

21

seeking his care).

Browne is bound by the facts he admitted in the plea agreement and in open court. <u>Baker</u>, 781 F.2d at 90. Because these facts show that he was acting outside the usual course of a professional medical practice, there is no basis for Browne's immunity claim.

In a related claim, Browne also argues that the Court did not have jurisdiction because the indictment failed to reference a drug quantity in the conspiracy charge. [R. 358 at 16-19]. This claim can be summarily denied, however, because the omission of a drug quantity from an indictment charging a defendant with a drug conspiracy offense does not divest the district court of jurisdiction. <u>See</u> <u>United States v. Cotton</u>, 535 U.S. 625, 630-31 (2002) (failure of an indictment to allege drug quantity does not deprive federal courts of jurisdiction); <u>Goode v. United States</u>, 305 F.3d 378, 386 (6th Cir. 2002); <u>United States v. Diaz</u>, 52 Fed. Appx. 810, 811 (6th Cir. 2002).

## V.  EVIDENTIARY HEARING

As a final matter, the Court must address whether Browne is entitled to an evidentiary hearing. He is not. Section 2255 directs the Court to hold an evidentiary hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). Thus, to receive a hearing, a defendant must make allegations that raise at least some possibility of relief. "[N]o hearing is required if the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." <u>Valentine v. United States</u>, 488 F.3d 325, 333 (6th Cir. 2007) (quoting <u>Arredondo v. United States</u>, 178 F.3d 778, 782 (6th Cir. 1999)). An evidentiary hearing is also not required where "there is nothing in the record to indicate that [the] defendant would [be] able to prove his allegations at an evidentiary hearing." <u>Amr v. United States</u>, 280 Fed. Appx. 480,

22

485 (6th Cir. 2008)  Here, all of Browne's claims regarding the validity of his guilty plea are directly contradicted by the record.  Furthermore, other than his own unsubstantiated and self-serving statements, Browne has not identified any additional evidence he could present at an evidentiary hearing.  For these reasons, an evidentiary hearing is not required.

## VI.  CONCLUSION

For the reasons discussed above, Browne's guilty plea was made knowingly, intelligently, and voluntarily.  Accordingly, Browne's remaining claims related to alleged sentencing errors and other perceived flaws in the proceedings are barred by his valid waiver of the right to collateral attack.  It is therefore RECOMMENDED that the Defendant's motion to vacate, set aside, or correct his sentence [R. 358] be DENIED.

The parties are directed to 28 U.S.C. § 636(b)(1) for a review of appeal rights governing this Report and Recommendation.  Specific objections to this Report and Recommendation must be filed within fourteen (14) days from the date of service thereof or further appeal is waived.  United States v. Campbell, 261 F.3d 628, 632 (6th Cir. 2001); Thomas v. Arn, 728 F.2d 813, 815 (6th Cir. 1984).  General objections or objections that require a judge's interpretation are insufficient to preserve the right to appeal.  Cowherd v. Million, 380 F.3d 909, 912 (6th Cir. 2004); Miller v. Currie, 50 F.3d 373, 380 (6th Cir. 1995).

Signed February 2, 2012.



Signed By:
Edward B. Atkins    EBA
United States Magistrate Judge